Bernhard E. KEISER,
Plaintiff-Appellant,

v.

COLISEUM PROPERTIES, INC., et al., Defendants,

Robert L. Bonner, John H. Candler and Jon P. Herring,
Defendants-Appellees.

A. Don FLECK, Plaintiff-Appellant,

v.

AUDITING SERVICES, INC., et al., Defendants,

Robert L. Bonner, John H. Candler and Jon P. Herring,
Defendants-Appellees.

H.G. LORTSCHER, Roger O'Hanlon, J. Reed Stovall, Jr., Plaintiffs-Appellants,

v.

AUDITING SERVICES, INC., et al., Defendants,

Robert L. Bonner, John H. Candler and Jon P. Herring,
Defendants-Appellees.

No. 84–8279.

United States Court of Appeals,
Eleventh Circuit.

July 1, 1985.

Rehearing and Rehearing En Banc
Denied Aug. 12, 1985.

Richard C. Freeman, III, Atlanta, Ga., for plaintiff-appellant.

William Lewis Spearman, Atlanta, Ga., for defendants-appellees.

* Honorable Clarence W. Allgood, U.S. District Judge, Northern District of Alabama, sitting by designation.

Before HENDERSON and HATCHETT, Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

In 1970 a company known as Coliseum Properties, Inc., began selling utility auditing franchises through its subsidiary, Auditing Services, Inc. The appellants here were among the approximately 100 people who paid between 5,000 and 15,000 dollars for the franchises. Auditing Services, Inc., was to provide a computerized review of utility bills and recover overcharges for customers of the franchisees. The franchisees had contracted with businesses to provide this service for 50 percent of the recovery. By the end of 1971 the franchise owners began having serious doubts about ASI's ability to provide the service and began taking steps to recover their investments.

In March 1972 Coliseum Properties, Inc., was sold to the appellees, Bonner, Candler and Herring. In May 1972 the first of three actions was initiated. The first lawsuit was filed on behalf of all the franchisees against the original owners, Speigel, Carroll, Lawson, et al. (Speigel group) and did not include any claims against Candler, Bonner or Herring (Candler group). Over the course of years the three suits were consolidated, various defendants were dismissed, and appellees were added. In 1980 the claims against the Candler group were severed from the claims against the Speigel group. The case against the Speigel group proceeded to trial and resulted in a verdict in favor of the plaintiffs against Speigel, Lawson, Carroll, et al. At that trial the plaintiffs proved that they had been victims of a conspiracy to defraud and were awarded damages as a result.

In 1983 ten of the original plaintiffs proceeded to trial against the remaining defendants, the Candler group. Of those ten, Keiser, Fleck, Stovall, Lortscher and O'Hanlon (Keiser group) were the only

ones who testified. Prior to trial, all the parties stipulated that the plaintiffs had been victims of a conspiracy to defraud perpetrated by the Speigel group. The court also informed the jury that the amount of damages had been established in the 1980 trial and instructed the plaintiffs that no additional damages could be shown. The only question presented to the jury at the 1983 trial was whether or not there was evidence to find the Candler group jointly liable with the Speigel group for the 1980 judgment. Following a two week trial the jury found the Candler group was jointly liable for the damages of the five plaintiffs who testified, but not to the five who did not testify.

On March 2, 1984 the trial judge granted a defense motion for judgment notwithstanding the verdict as to the Keiser group in whose favor the jury returned a verdict. The judge also conditionally granted a new trial pursuant to Fed.R.Civ.P. 50(c). It is from this order that the plaintiffs appeal.

The standard of review on the motion for a judgment notwithstanding the verdict is governed by federal law. *Federal Kemper Life Assur. Co. v. First Nat'l. Bank,* 712 F.2d 459 (11th Cir.1983). The court on appeal must apply the same principles as applied by the trial court:

> On motions … for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair minded men might reach different conclusions, the motions should be denied.

*Rabun v. Kimberly-Clark Corp.,* 678 F.2d 1053 (11th Cir.1982) (citing *Boeing v. Ship-*

*man,* 411 F.2d 365, 374–75 (5th Cir.1969)). Applying this standard to the present case the judgment notwithstanding the verdict must be affirmed.

In this diversity case the law of Georgia governs the substantive issues. The court charged the jury that the appellees could be found jointly liable for the damages which had been established in the 1980 trial against the Speigel group if they found that the appellees had: (1) joined the prior conspiracy thus becoming co-conspirators; (2) individually committed the tort of fraud and deceit which combined with the fraud and deceit of the prior defendants to jointly cause the damages sustained by the plaintiffs; or (3) committed the tort of fraud and deceit through agents, which combined with the fraud and deceit of the prior defendants to jointly cause the damages sustained by the plaintiffs. In order to reverse the decision of the district court to grant the defendants' motion this court must find evidence in the record which would support the jury's verdict under one of these three theories.

In the briefs to this court, the Keiser group skillfully excerpted the transcript from the second trial, wove it together with evidence from the first trial and argued there was sufficient evidence to support a finding that the Candler group and the Speigel group were joint tortfeasors, thus jointly liable for the judgment granted in 1980. However, when the entire transcript is read it becomes apparent to this court that that was not the case. The appellants attempted to disguise the weakness of their case by combining all the evidence in one argument as though there was only one combined theory of liability.

The jury could have found liability based on the conspiracy theory. The inconsistency in the jury verdict, that is a finding in favor of the Keiser group but not in favor of the five plaintiffs who did not testify, indicates that the jury did not rely on this theory. If the jury had found evidence of a conspiracy, then the Candler group would have been jointly liable with their alleged

co-conspirators, the Speigel group, to all the plaintiffs—not just five of them.

The defendants could have been found jointly liable if the Keiser group had proven that the acts of the Candler group had amounted to fraud and deceit which then combined with the fraud and deceit of the Speigel group. In order to prove a case under this theory the plaintiffs must show that the defendants themselves made representations to the plaintiffs, knowing they were false, with the intent to defraud. In addition to these elements the plaintiffs must have reasonably relied on those misrepresentations to their detriment. *Martin Burks Chevrolet, Inc. v. McMichen*, 136 Ga.App. 845, 222 S.E.2d 633 (1975).

■ The evidence established that each of the plaintiffs received a letter dated December 15, 1971 from Speigel, advising that the auditing functions of Auditing Services, Inc., were being terminated. The appellants freely admitted that they had already requested that Auditing Services, Inc., repurchase their franchises before the company changed hands. They did not purchase additional franchises from the new owners nor did they incur expenses or forego any legal action based on anything they were told by someone in the Candler group. In fact, they went ahead and filed a suit for fraud and deceit against the Speigel group in May 1972. Any reliance they placed on representations by the new owners was unreasonable in light of what they already knew.

The plaintiffs have in no way shown the court that all the requirements for a finding of actionable fraud were met. The district judge correctly found there was no evidence to support a verdict based on this theory.

■ The third theory under which the jury could have found for the plaintiffs would have been an agency theory. Had the jury found from either direct or circumstantial evidence that the defendants had made misrepresentations through their agents which resulted in losses to the plaintiffs then the Candler group could have

been found jointly liable with the Speigel group. Once again the evidence fails to support a jury finding under this theory.

The district court found that there was no evidence of record which would support a jury finding that the Candler group participated in any conspiracy, or along with the Speigel group jointly injured the plaintiffs. The judge further found that there was no evidence of any injury or damages attributable to the actions of Bonner, Candler and Herring apart from that found by the jury in the 1980 trial against Speigel, Lawson and Carroll.

After carefully reviewing the record and the briefs, it is the opinion of this court that the order of the district judge granting a judgment notwithstanding the verdict should be

AFFIRMED.