23390. WATKINS *v.* AUGUSTA CHRONICLE PUBLISHING COMPANY.

DECIDED APRIL 3, 1934.

*Thomas L. Hill, Frederick B. Tyler,* for plaintiff.
*Hull, Barrett & Willingham,* for defendant.

GUERRY, J.   Paul Watkins brought an action against the Augusta Chronicle Publishing Company, alleging that he was a candidate for the office of sheriff of the municipal court of Augusta in an election to be held the 21st day of December, 1932, and that on

the 19th day of December the Augusta Chronicle .published and circulated an article stating that a group of negroes representing 1100 registered voters endorsed McDonald, Sweeney, and Watkins as candidates for the municipal court, at a mass meeting at the Lenox Theatre. The article purported to contain extracts from a number of speeches made at the meeting by various speakers. In the next column to this article there appeared a notice of a mass meeting to be held at the court-house to build an invincible voting machine for the sustenance of white supremacy in this community. Speakers at the meeting were to be Isaac S. Peebles Jr., Thomas W. Hardwick, and C. Vernon Elliott. It was alleged in the petition that this article caused his defeat in the election, and general damages in the sum of $5000 were asked for. The court sustained a general demurrer and the plaintiff excepted.

This court will take judicial cognizance of the fact that under the act creating the Augusta municipal court (Ga. L. 1931, p. 271), the judge, clerk, and sheriff of that court were to be elected the third Wednesday in December, 1932, to wit, December 21st. This court will also take judicial cognizance that when there is a primary for the selection of candidates, it precedes a general election. Under the allegations of the petition the plaintiff was a candidate in the election and not in the primary. The petition disclosed that considerable agitation arose over the question whether a white primary should be called or not. It can reasonably be ascertained from the petition that the petitioner was opposing, in the election, the candidates nominated in the primary. The article, attached as an exhibit to the petition,· purports to be a report of an alleged meeting, reporting what was said and done thereat. It is contended by the plaintiff in his brief that this article in effect says: "This white man Watkins is not fit to hold public office, in that he has consorted with negroes; he has attended a negro political meeting; he has sought and solicited the negro indorsement of himself as a candidate for local public office; he has held himself out to the public as a candidate of the negro for said office, and he is trying to break down white political supremacy in the city of Augusta." A careful reading of the article will disclose that it nowhere alleges or imputes to the plaintiff any crime, or charges him with being guilty of a debasing act which may exclude him from society, or makes any charge against his office, trade or profession. In fact

it does not allege by innuendo or suggest by implication any act on the part of the plaintiff calculated to subject him to public scorn, hatred, and ridicule. It does state that his candidacy was indorsed by the negroes, representing 1100 voters, at such meeting. The article also states that the plaintiff was not present at such meeting. The Civil Code (1910), § 4428, declares: "A libel is a false and malicious defamation of another, expressed in print, or writing, or pictures, or signs, tending to injure the reputation of an individual, and exposing him to public hatred, contempt, or ridicule. The publication of the libelous matter is essential to recovery." Section 4433 declares: "Slander, or oral defamation, consists, first, in imputing to another a crime punishable by law; or, second, charging him with having some contagious disorder, or being guilty of some debasing act which may exclude him from society; or, third, in charges made on another in reference to his trade, office, or profession, calculated to injure him therein; or, fourth, any disparaging words productive of special damage flowing naturally therefrom. In the latter case, the special damage is essential to support the action; in the three former, damage is inferred." It can not be said that the article charges that a crime has been committed or that the plaintiff has a contagious disorder, nor is any charge made in reference to plaintiff's trade, office, or profession.

It is contended that the plaintiff is charged with a debasing act which would exclude him from society. With this contention we can not agree. The act does not charge that he has consorted with negroes, and certainly not that he has socially consorted with them; on the other hand the article states that the plaintiff was not present, and therefore he had not attended a negro meeting. The only promise the plaintiff is said to have made is that he "would deal justly with both whites and the negroes as an officer of the municipal court. Nowhere in said article is it charged that he has held himself out as a candidate of the negro for said office. The fifth contention is that he is trying to break down white political supremacy in the city of Augusta. Conceding that the article charges this, does that fact make it libelous? In 17 R. C. L. 354, § 10, it is said: "Charging a candidate with being unfaithful to the party which has nominated him and with conniving with an opposing party for support has been held not libelous, although the

rule is otherwise if a charge of treachery and dishonesty is made against him." "That publications respecting political affairs, public officers, and candidates for office are in a measure privileged is recognized by the overwhelming weight of authority. One who seeks public office, or any person who claims approval or patronage from the public, waives his right of privacy." See *Pavesich* v. *New England Life Ins. Co.*, 122 *Ga.* 190 (50 S. E. 68, 69 L. R. A. 101, 106 Am. St. R. 104, 2 Ann. Cas. 561); *Anderson* v. *Kennedy*, 47 *Ga. App.* 380 (170 S. E. 555).

There is nothing in the article that in any way calls into question directly or by innuendo the character of the plaintiff. It is not charged that he has said or done anything wrong. It does purport to state in a news article that certain negroes advised other members of their race to support this plaintiff in a political race. It has been said of a great American that "we love him for the enemies he has made." This court is not prepared to say that any man is to be hated for the friends he has made; nor are we willing to say that it is libelous to say of a man that he has the indorsement of any particular racial group of our citizens. No man is worthy of holding office in this or any other State who does not purpose in his heart to deal fairly and justly with all men, irrespective of race, color, or creed. All right-thinking men covet the good will and esteem of all men.

Our courts have said that "under certain circumstances" to call a white man a negro may be actionable. *Wolfe* v. *Ga. Ry. and Electric Co.*, 124 *Ga.* 693 (53 S. E. 239). This is true because it may impute to him illegitimate birth, for the reason that intermarriage is prohibited among the races in this State. Neither in the *Wolfe* case, supra, nor in any other decision have our courts ever held it to be actionable, especially actionable per se, to state that one man or a group of men has indorsed another. The statements made in the article are certainly not debasing. They are not libelous per se. No damage, therefore, is inferred. Special damage is essential to support the action. There must be disparaging words productive of special injury flowing naturally therefrom. No special damages are asked for in the petition, only general damages being prayed for. The court, therefore, did not err in dismissing the petition. *Windsor* v. *Oliver*, 41 *Ga.* 538; *Ford* v. *Lamb*, 116 *Ga.* 655 (42 S. E. 998); *Dun* v. *Weintraub*,

111 *Ga.* 416 (36 S. E. 808, 50 L. R. A. 670) ; *Anderson* v. *Kennedy,* supra.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*